1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10   VENUS PICARDAL VILLEGAS,

11                    Plaintiff,                    CASE NO. 11-cv-05996 JRC

12          v.                                      ORDER DISMISSING
                                                    PLAINTIFF'S COMPLAINT
13   MICHAEL J. ASTRUE, Commissioner
14   of the Social Security Administration,

15                    Defendant.

16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

     Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United
19
     States Magistrate Judge, ECF No. 8). Plaintiff filed an Opening Brief (ECF No. 14) and
20
     defendant filed a Responsive Brief (ECF No. 20).
21
            While plaintiff clearly suffered from severe impairments related to her multiple
22
23   injuries on the job as a licensed practical nurse ("LPN"), all of her treating health care

24

providers, and most of the evaluating and examining experts who have offered opinions, agreed that with proper training, she still was capable of performing at least some forms of sedentary work. The ALJ's written decision is without harmful legal error and based on substantial evidence in the record as a whole. Therefore, this Court affirms pursuant to sentence four of 42 U.S.C. § 405(g) the Commissioner's determination that plaintiff is not disabled pursuant to the Social Security Act.

<u>BACKGROUND</u>

VENUS PICARDAL VILLEGAS was 44 years old on the date of the ALJ's written decision of July 28, 2010, and was 40 years old on her alleged date of disability onset of August 2, 2006 (Tr. 13, 157). She completed one year of college and vocational training and became a Licensed Practical Nurse ("LPN") (Tr. 48). For 15 years, she worked as an LPN at a state mental hospital (Tr. 50-51, 150-56).

On Christmas day, December 25, 2002, plaintiff was injured while lifting patients at work, resulting in a back injury (Tr. 212). She also had been injured earlier that year in June of 2002 when she had been kicked by a patient (*id.*). Although she had some progressive pain in her low back following the Christmas incident, she gained relief from physical therapy and ibuprofen, and returned to her duties (*id.*).

Plaintiff again was injured on the job after being struck in the back in July of 2004, resulting in low back pain radiating into her left buttock and thigh; and numbness and tingling in her left foot (Tr. 15, 211, 295). An MRI taken in September of 2005 revealed that plaintiff had disc degeneration at L4-5 and L5-S1, with disc protrusion;

mild left neural foraminal narrowing; and a small annular tear at the posterior aspect of the L4-5 disc (*see* Tr. 295-96).

Plaintiff was able to return to light duty for 2 months, but then lost her job because of a budget cut (Tr. 53-54).  At her administrative hearing, plaintiff testified that she was able to do the light duty work after her injuries (*id.*). She returned sometime later to her regular duties, as opposed to the light duty work that she was able to do before the hospital's budget cut, but only lasted for two days because she could not function in her normal job (Tr. 54).

Almost four years later -- on February 10, 2008 -- plaintiff received a psychological evaluation from Richard W. Washburn, Ph.D. ("Dr. Washburn") (*see* Tr. 245-48). She reported that she was nervous, anxious and depressed (Tr. 245).  She related to Dr. Washburn that she had panic attacks related to the incident that gave rise to her injury, resulting in sleeping problems, anxiety and depression (Tr. 16, 245-48).  At that time, Dr. Washburn had the diagnostic impression that plaintiff suffered from post traumatic stress disorder, secondary to physical assault; panic disorder with mild agoraphobia; and dysthymic disorder (*see* Tr. 248).  He also noted that she had chronic pain and discomfort; and PTSD triggers (*id.*).

Dr. Washburn specifically opined that plaintiff may have been "somewhat prone to use poor judgment under stress, but otherwise her cognitive functioning is intact" (*see id.*). At that time, Dr. Washburn concluded that counseling would allow plaintiff "to return to LPN employment in some setting," as she had a favorable prognosis for recovery (*see id.*). He noted that she lacked the emotional stability to cope with the

normal stress of employment "at this time" (*id.*). He anticipated that mental health

counseling would require at least a year to accomplish (*id*.).

Plaintiff did not seek any mental health treatment for almost a year and one half --

until June of 2009, when she began seeing psychiatrist J. Daniel Wanwig, M.D. ("Dr.

Wanwig") (Tr. 451-52).  Although plaintiff had health insurance coverage for this

treatment, she testified that she did not seek counseling until 2009 because her mental

health symptoms were not that severe (Tr. 22, 62 ("the symptoms was (sic) not really felt

at that time")).  Plaintiff did not report any mental health symptoms to the Social Security

Administration until after her initial claim was denied (*see* Tr. 161 (plaintiff reported only

"back and leg pain due to herniated disc" as the illnesses, injuries, or conditions that

limited her ability to work); *see also generally* Tr.160-68, 169-176; *but see* Tr. 180-87

(November 27, 2008 disability report, filed after her October 09, 2008 initial denial)). For

example, despite her testimony at her hearing about nightmares and her indications that

she woke up in the middle of the night with a pounding heart, when she initially reported

her ability to function to the Social Security Administration, she indicated specifically

that her sleep was disrupted by back pain, but failed to mention any sleep disruption from

anxiety (*see* Tr. 63, 170, 246).

Plaintiff consistently has reported limitations because of her back problems.

Nevertheless, a number of health care providers also noted that with retraining, she

should be able to perform light or sedentary work.  Examining physician, David C. Thut,

M.D. ("Dr. Thut") saw plaintiff on April 11, 2006 at the request of the Department of

Labor and Industries (*see* Tr. 210-17).  Dr. Thut, an orthopedic surgeon, conducted an

1   orthopedic examination and reviewed the MRI of her lumbar spine.  He agreed with the

2   diagnosis of lumbar disc protrusion at L5-S1 and also diagnosed a lumbar strain (Tr.

3   216).  He then performed a "job analysis" and concluded that plaintiff could perform the

4   physical activities described in a job analysis for an LPN (*see* Tr. 218-23). In doing so,

5   Dr. Thut specifically indicated that he saw "no reason that she would be unable to work"

6   (Tr. 216).  He further indicated that he did "not see any specific restrictions that should be

7   placed" on plaintiff based on "the objective findings on today's examination" (*id.*).

8           This is the beginning of a long line of health care providers who evaluated

9   plaintiff's condition and maintained that with retraining, plaintiff would be able to be

10  involved in some form of work activity.  John M. Blair, M.D. ("Dr. Blair"), treated

11  plaintiff for her back condition beginning in September of 2006.  Although he disagreed

12  that plaintiff could return to work as an LPN, he agreed that retraining would be

13  appropriate, with light duty restrictions (*see* Tr. 260).  He treated her with epidural

14  injections (*see* Tr. 259).  These provided plaintiff with some relief, although temporary

15  (*see* Tr. 257-59).   He consistently noted that she could be retrained:  "I did not see any

16  particular reason why Ms. Villegas could not do the retraining program, which she has

17  been approved to do but has apparently dropped out of" (Tr. 255); "She can return to

18  work as a unit clerk" (Tr. 254).  Nevertheless, she still resisted retraining:

19

20              She is satisfied to live with her current symptoms but she
                does not wish to attend her retraining classes.  I have told her
21              that because she is able to sit and stand as tolerated she
                should be able to complete the course work over the next six
22              months.

23  (Tr. 251).

24

1    Although she continued to demonstrate limitations related to her bulging disc, Dr.

2    Blair noted in March of 2008 "I see no reason to alter her current retraining program and

3    I do not view any additional work restrictions as necessary" (Tr. 250).

4    Plaintiff continued to see a variety of physicians, whose opinions were provided to

5    the ALJ at the time of the hearing.  None of them concluded that she was unable to

6    perform any kind of work (*see, e.g.,* Records of Manuel P. Posadas, M.D., Tr. 302

7    (plaintiff "allowed retrain up to toleration"); Robert L. Caldwell, M.D. ("Dr. Caldwell"),

8    Tr. 478 ("she is able to return to work in a light to medium capacity")).  Dr. Caldwell had

9    seen plaintiff for follow-up treatment of her back condition.  He recommended that she

10   undergo work conditioning.  Plaintiff underwent work conditioning beginning in March

11   of 2010 at MVP Physical Therapy (Tr. 446-47).  In June of 2010, just two weeks before

12   her hearing, her treating physician, Dr. Caldwell, stated the following:

13

14           Again, I think that these findings are fixed and stable and that
             she is able to return in a light to medium status to an
15           appropriate work environment.

16   (Tr.  478).

17   Regarding her mental health condition, after seeing several psychologists and

18   psychiatrists, plaintiff began treating with Dr. Wanwig, a psychiatrist, in June of 2009

19   (Tr. 451).  He prescribed medications and recommended a course of vocational

20   rehabilitation.  He concluded in October of 2009 that plaintiff "is in a sound frame of

21   mind to return to work" (Tr. 456).  In the last meeting with his patient before the hearing,

22   Dr. Wanwig concluded that plaintiff's "mental condition is not a barrier to training" (Tr.

23   463).

24

ORDER DISMISSING PLAINTIFF'S COMPLAINT
- 6

1

2

PROCEDURAL HISTORY

3       Plaintiff protectively filed an application for Title II disability insurance benefits

4  on June 6, 2008, with an alleged disability onset date of August 6, 2006.  Her application

5  was denied initially on October 9, 2008 (Tr. 81-83), and following reconsideration on

6  March 11, 2009 (Tr. 87-91).  The initial hearing before Administrative Law Judge Laura

7  Valente ("the ALJ") was conducted on June 17, 2010 (Tr. 32-78) and a written decision

8  was filed on July 28, 2010 (*see* Tr. 13-27).

9       On July 28, 2010, the ALJ issued a written decision in which she found that

10  plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 13-27).  On

11  November 17, 2011, the Appeals Council denied plaintiff's request for review, making

12  the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-

13  6).  *See* 20 CFR § 404.981.

14

15       On December 5, 2011, plaintiff filed a complaint in this Court seeking judicial

16  review of the ALJ's written decision (*see* ECF No. 1).  Plaintiff challenges the ALJ's

17  review of the medical evidence, the ALJ's evaluation of plaintiff's RFC, the ALJ's

18  evaluation of plaintiff's credibility, and also alleges that the ALJ relied on an improper

19  hypothetical from the vocational expert (*see* Opening Brief, ECF No. 14).

STANDARD OF REVIEW

20

21       Plaintiff bears the burden of proving disability within the meaning of the Social

22  Security Act (hereinafter "the Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.

23  1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines

24

disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). ). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of

legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

It should be noted, once again, that plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). *See Meanel*, *supra*, 172 F.3d at 1113; *see also Johnson*, *supra*, 60 F.3d at 1432.  In this Court's review of the record, plaintiff never meets that burden with evidence that she truly was disabled.

1  Although she certainly faced obstacles due to her back condition and mental

2  impairments, no one – other than plaintiff herself, – has ever concluded that she was

3  incapable of returning to at least some form of employment.  According to the ALJ,

4  plaintiff simply failed to meet the burden to prove disability.  This Court cannot disagree.

5
   **A.   The ALJ did not err in her evaluation of plaintiff's treating healthcare**
6          **providers.**

7        The ALJ concluded that plaintiff suffered from lumbar degenerative disc disease,

8  anxiety disorders and affective disorders (Tr. 15).  Plaintiff does not dispute the ALJ's

9  evaluation of medical evidence related to her back condition.  Nor does plaintiff dispute

10 the ALJ's failure to identify plaintiff's alleged carpel tunnel syndrome as a "severe

11 impairment" (*see* Plaintiff's Opening Brief, ECF No. 14, at pp. 8–11).  Instead, plaintiff

12 focuses her argument on the ALJ's alleged failure to provide sufficient weight to

13 opinions by plaintiff's treating psychiatrist, Dr. Wanwig, and consulting examiner, Dr.

14 Washburn (*see* ECF No. 14, at pp. 9-11).  Plaintiff also cites the report of examining

15 psychiatrist, Lanny Lloyd Snodgrass, M.D. ("Dr. Snodgrass"), who examined plaintiff

16 and reviewed her mental health condition in May of 2009 (Tr. 410–16).  Plaintiff

17 contends that the ALJ's decision was not supported by substantial evidence in the record

18 (*id*. at p. 11).

20       In reviewing the evidence, however, it appears that the ALJ's ruling largely is

21 consistent with the opinions provided by these mental health professionals.  While the

22 ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

23 opinion of either a treating or examining physician or psychologist, (*see Lester v. Chater*,

24

1   81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.

2   1991)), and must provide specific and legitimate reasons to reject a doctor's contradicted

3   opinion, (*see Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043)),

4   plaintiff fails to explain how any of the ALJ's conclusions were at odds with any of the

5   mental health care providers' conclusions.  The ALJ provided a detailed and thorough

6   summary of the facts and clinical evidence, none of which directly contradict the ALJ's

7   conclusions. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*

8   *supra,* 881 F.2d at 751) (an ALJ can accomplish the rejection of contradicted doctors'

9   opinions by "setting out a detailed and thorough summary of the facts and conflicting

10   clinical evidence, stating h[er] interpretation thereof, and making findings").

11

12           For instance, plaintiff cites the opinion of J. Daniel Wanwig, her treating

13   psychiatrist for much of the period of claimed disability.  The ALJ's conclusions

14   regarding plaintiff's severe impairments of anxiety disorder and affective disorder are

15   consistent with Dr. Wanwig's conclusions (*compare* Tr. 15 *with* Tr. 452-463).  While the

16   ALJ incorrectly noted at one point that Dr. Wanwig had not examined plaintiff (*see* Tr.

17   25), this misstatement was corrected by her thorough review of Dr. Wanwig's clinical

18   notes and evaluation (*see* Tr. 17, 19, 23).  As noted above, despite these noted severe

19   mental impairments, Dr. Wanwig concluded that plaintiff's mental condition was stable

20   and with retraining she was capable of employment (*see, e.g.*, Tr. 457 ("only barrier to

21   employment right now would be retraining"), 458, 460).  He concluded specifically that

22   plaintiff's "mental condition is not a barrier to training" (Tr. 463).  This is not

23   inconsistent with the ALJ's finding and, in fact, the ALJ cited Dr. Wanwig's treatment

24

1    record to support her conclusion (Tr. 23). The Court concludes that the ALJ's findings

2    regarding the opinions of Dr. Wanwig are supported by substantial evidence in the record

3    as a whole.

4        Plaintiff objects that the ALJ failed to take into consideration the earlier

5    consultative examination performed by Dr. Washburn, who examined plaintiff on

6    February 10, 2008. The ALJ gave no weight to the specific opinion by Dr. Washburn that

7    plaintiff "lacked the emotional stability needed to cope with normal stress of employment

8    *at this time*" (Tr. 24, 248 (emphasis added)). The ALJ found that this opinion was

9    unsupported by objective medical examination findings and appeared to be based on

10   plaintiff's subjective self-reports, as her mental status examination results largely were

11   normal (*see* Tr. 24). The Court notes that plaintiff herself testified that she was not really

12   experiencing mental health symptoms until 2009 (*see* Tr. 62). In addition, Dr. Washburn

13   concluded that with mental health counseling, plaintiff could return to full employment in

14   some capacity (Tr. 248 ("the prognosis for recovery from the PTSD and related

15   emotional problems with mental health counseling is favorable. It is likely that such

16   counseling would allow her to return to LPM employment in some setting")).  This is not

17   inconsistent with the conclusions reached by her other health care providers.  And, in

18   fact, as noted above, plaintiff subsequently received mental health treatment from Dr.

19   Wanwig.  Therefore, although the ALJ gave "no weight" to some of Dr. Washburn's

20   conclusions, considering that Dr. Washburn had not seen her for over two years prior to

21   the hearing; and considering that the mental health professionals who saw plaintiff after

22   Dr. Washburn also recommended counseling and retraining; and finally considering that

1  with counseling and retraining, those mental health professionals believed that plaintiff

2  was employable, it hardly can be said that the ALJ's decision failed to include a proper

3  evaluation of Dr. Washburn's opinion.

4       It also should be noted that the ALJ's conclusions were consistent with the

5  conclusions of examining psychiatrist Lanny Loyd Snodgrass, M.D., who evaluated

6  plaintiff in May of 2009 and opined that, psychiatrically, plaintiff could begin reasonable

7  employment with "managed psychiatric treatment" (*see* Tr. 416).  Again, this opinion is

8  not inconsistent with the ALJ's conclusions.

9       The ALJ's conclusions also are consistent with the opinions of the non-examining,

10  non-treating evaluator, psychologist Cynthia Collingwood, Ph.D. ("Dr. Collingwood")

11  (Tr. 397-99), whose opinion was affirmed by psychiatrist Robert Hoskins, M.D. (Tr.

12  401). Dr. Collingwood concluded that plaintiff "retains the capacity for productive tasks,

13  with noted limitations" (Tr. 399).

14       In summary, plaintiff has not cited any opinion by either a treating, examining, or

15  reviewing health care professional who concluded that plaintiff's mental or physical

16  impairments entirely prevented her from working.  They all apparently agree that with

17  retraining and treatment, she was capable of employment.  Therefore, the ALJ did not

18  evaluate the medical evidence improperly. Based on the relevant record, the Court

19  concludes that the ALJ's findings regarding the medical opinions are based on substantial

20  evidence in the record as a whole.

**B.     The ALJ properly evaluated plaintiff's Residual Functional Capacity ("RFC").**

After finding that plaintiff could not perform her past relevant work as an LPN, the ALJ consulted with a vocational expert and identified several representative occupations that plaintiff could perform that were available within the Washington economy.  These jobs included occupations as a bonder, semi conductor, a roto assembler and a reel assembler (Tr. 26).  All of these jobs are unskilled sedentary occupations and, according to the vocational expert, were consistent with claimant's age, education, work experience, and Residual Functional Capacity ("RFC") (Tr. 26, 69-76).  Plaintiff argues that this finding fails to consider a number of functional limitations, including her ability to respond to supervision and co-workers; limitations on her concentration, persistence and pace; and her fatigue and ongoing sleep disturbances; in addition to her low back condition (ECF No. 14, at pp. 13-14).

Again, as noted above, each of these limitations was included in records provided to the ALJ by plaintiff's various health care providers and examiners.  All of these limitations also were given to the vocational expert during the course of the proceeding.  Each of those providers and examiners indicated that those limitations did not render plaintiff incapable of doing sedentary work.  In fact, as noted above, all of them said that with training and treatment she should be able to perform light work.

If plaintiff can perform all or substantially all of the exertional demands required of a given job, then the ALJ must conclude that plaintiff is not disabled. *See* Social Security Ruling "SSR" 83-11.  The ALJ correctly noted that plaintiff failed to meet her

1   burden of proving disability.  And, in fact, the vocational expert testified that given all of

2   the factors set forth in the record, she still should be able to perform sedentary work. To

3   the extent that the ALJ did not adopt the particular limitation opined by any of plaintiff's

4   doctors into plaintiff's RFC, the ALJ adequately provided a detailed summary of the facts

5   and evidence explaining her findings regarding plaintiff's RFC. *See Reddick, supra*, 157

6   F.3d at 725. The ALJ's conclusions are supported by substantial evidence.

7
8   **C.      The ALJ did not err in finding that certain portions of plaintiff's testimony was not credible.**

9         At the hearing, plaintiff testified that she had severe lower back pain radiating into

10  her left leg and also numbness and tingling in her left leg (Tr. 21).  This is consistent with

11  the medical evidence reviewed above.  She also testified that she was not able to work

12  because she could not tolerate the pain (Tr. 49).  She also testified that her treating

13  physician, Robert L. Caldwell, M.D. had not released her for work.  (*id.*)  Her full

14  testimony sets forth a number of limitations in her daily activity (Tr. 47–67).  Among

15  other things, the ALJ noted that plaintiff testified that she could not drive for more than

16  ten minutes; she could not sit and watch a 1-hour movie; she had to get up and stretch and

17  walk and then sit down again; her left leg pain became more severe when standing for

18  more than 20 minutes; although she could wash dishes and go shopping for groceries, she

19  needed assistance from her husband when shopping; and she had problems sleeping and

20  anxiety attacks two times a week (Tr. 21)

21

22

23

24

1    While the ALJ considered this testimony, she concluded that plaintiff's statements

2    concerning the intensity, persistence and limiting effects of these symptoms were not

3    credible (Tr. 21).

4    The determination of whether or not to accept a claimant's testimony regarding

5    subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

6    *Smolen*, *supra*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).

7    First, the ALJ must determine whether or not there is a medically determinable

8    impairment that reasonably could be expected to cause the claimant's symptoms. 20

9    C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Absent

10   affirmative evidence that the claimant is malingering, the ALJ must provide specific

11   "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80

12   F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester*, *supra*, 81 F.3d at 834;

13   *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). An ALJ is not "required to

14   believe every allegation of disabling pain" or other non-exertional impairment.  *Fair v.*

15   *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). The ALJ

16   may "draw inferences logically flowing from the evidence."  *Sample, supra*, 694 F.2d at

17   642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F.

18   Supp. 19, 20 (N.D. Cal. 1980)).

19   The ALJ may consider "ordinary techniques of credibility evaluation," including

20   the claimant's reputation for truthfulness and inconsistencies in testimony, and may also

21   consider a claimant's daily activities, and "unexplained or inadequately explained failure

to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284; *see also Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999).

In this case, after noting plaintiff's testimony regarding her symptoms, the ALJ embarked on an exhaustive evaluation of the medical testimony – much of which confirmed the symptoms identified by plaintiff, but did not confirm the intensity or limiting effects of those symptoms (*see* Tr. 21-23). As noted above, although there is no dispute with the conclusion that plaintiff suffers from severe impairments, there is disagreement between plaintiff's testimony and her treating and examining health care providers as to whether or not she can work with those impairments. Everyone, other than plaintiff, agrees that with treatment and training, plaintiff should be able to be employed, *see* Discussion, *supra,* at pp. 9-12.

Of particular interest is the ALJ's evaluation of plaintiff's mental health history. Although the alleged onset of her disability began in 2006, she did not seek any mental health treatment until June 25, 2009, when she began seeing Dr. Wanwig (Tr. 22). Notably, this was a year and one-half after she first was evaluated by Dr. Washburn, at the request of plaintiff's attorney (Tr. 22). Although she had health insurance coverage during this period, she testified that she did not get treatment because her mental health symptoms were not severe until 2009 (Tr. 22).

It often is the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, as this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because she wishes to remain disabled and receive benefits, or because she is not

suffering from that severe of an impairment if not doing everything possible to remedy it. *See* 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); *see also* SSR 96-7 1996 SSR LEXIS 4, at *21-*22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . . and there are no good reasons for this failure").

Here, plaintiff admits that the reason she did not seek treatment was because her condition was not that severe. Additionally, some of her mental health conditions, such as fatigue and sleep disturbances, were being treated effectively with medication (*see e.g.,* Tr. 452, 455). Ultimately, her treating psychiatrist, Dr. Wanwig, concluded that her condition was "quite stable" and that she was in a "sound frame of mind to return to work" (Tr. 456). He concluded as late as one month before the hearing, that plaintiff's "mental condition is not a barrier to training" (Tr. 463).

Finally, it should be noted that although plaintiff testified that her treating physician, Dr. Caldwell, had not released her for work (Tr. 49), Dr. Calswell's report, dated less than a month before the hearing, states exactly the opposite:

> I again feel that her findings are fixed and stable and that she is able to return to work in a light to medium capacity with the restrictions outlined in the discharge note from her physical therapy that can be found in the records from March.

(*See* Report of Robert L. Caldwell, M.D. of June 2, 2010, Tr. 478)

1    Based on the above, the ALJ provided "clear and convincing" reasons for rejecting

2    some of plaintiff's testimony regarding the extent of her alleged disability. *See Smolen,*

3    *supra* 80 F.3d at 1283-84; *Reddick, supra* 157 F.3d at 722 (*citing Lester v. Chater*, 81

4    F.3d 821, 834 (9th Cir. 1996)); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

5    The ALJ relied on plaintiff's failure to seek or comply with treatment; plaintiff's

6    inconsistent statements regarding her carpal tunnel syndrome and mental health

7    symptoms; the opinions of plaintiff's doctors; and the lack of objective medical evidence

8    to support plaintiff's allegations of disabling pain.

9        For the reasons stated, and based on the relevant record, the Court concludes that

10   the ALJ's findings regarding plaintiff's credibility and testimony are supported by

11   substantial evidence in the record as a whole. *See Smolen, supra*, 80 F.3d at 1283-84;

12   *Reddick, supra*, 157 F.3d at 722.

13

14   **D.    There was no error in the ALJ's use of a hypothetical with the vocational**
           **expert.**

15       Plaintiff's main concern with the hypothetical posed to the vocational expert is

16   that the ALJ failed to include all of the limitations plaintiff claims was supported by

17   medical evidence in the record as a whole (*see* ECF No. 14, at pp. 18-20).

18       Plaintiff does not state what portions of the several hypotheticals propounded to

19   the vocational expert were inaccurate.  Instead, plaintiff broadly states that the

20   hypothetical rejected the opinion of Dr. Washburn and discounted or did not discuss

21   portions of the record provided by Dr. Wanwig and Dr. Snodgrass.  In the absence of

22   specific objections regarding the problems with the propounded hypotheticals, this Court

23

24

ORDER DISMISSING PLAINTIFF'S COMPLAINT
- 19

cannot conclude that those hypotheticals were inaccurate.  It is incumbent upon the party objecting to the ALJ's finding to provide sufficient detail regarding the scope of the objection for the Court to evaluate the ALJ's ruling.  It is not sufficient for plaintiff to cite generally "the record" without specifically identifying what portions of the record and what portions of the hypothetical plaintiff claims to be inaccurate (*see* ECF No. 14, pp. 19-20).

Because, as previously set forth (*see supra* at pp. 5–16), this Court finds that the ALJ properly evaluated the medical testimony and plaintiff's credibility, the ALJ's posed hypothetical, likewise, was properly constructed.

CONCLUSION

Based on these reasons, and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** is for **DEFENDANT** and the case should be closed.

Dated this 24th day of October, 2012.


J. Richard Creatura
United States Magistrate Judge

ORDER DISMISSING PLAINTIFF'S COMPLAINT
- 20